UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AL SMITH, et al.,

    Plaintiffs,

v.

AMERICAN GREETINGS CORPORATION,

    Defendant.

Case No. 14-cv-02577-JST

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: ECF Nos. 35, 40, 42, 53

Before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 35. Plaintiff has also submitted supplemental briefing in response to concerns the Court identified at the April 30, 2015 preliminary approval hearing. See ECF Nos. 48, 52, 53.

For the reasons discussed below, the Court will grant the motion, conditionally certify the settlement class, direct the distribution of class notice, appoint class counsel, class representatives, and the settlement administrator, set notice deadlines and a final approval hearing date, and make a preliminary determination that the settlement is "fair, reasonable, and adequate" under Rule 23(e)(2) of the Federal Rules of Civil Procedure.

**I.  BACKGROUND**

This is a putative class action against American Greetings Corporation, brought on behalf of its current and former non-exempt California employees. Third Am. Compl.[1], ECF No. 40, Ex. A, ¶ 1. Plaintiffs allege that Defendant "is the world's largest greeting card company, and sells paper greeting cards, electronic greeting cards, party products, and electronic expressive content,

---

[1] The parties have stipulated to permit Plaintiffs to file a third amended complaint. ECF No. 40. The Court hereby approves that stipulation. Plaintiffs shall file their third amended complaint on the docket within ten days of the date of this order.

among other things." Id., ¶ 9. Defendant employed Plaintiffs as installers of Defendant's greeting card displays in retail locations, and as merchandisers of Defendant's products. Id., ¶¶ 6, 7.

Plaintiffs allege that Defendant "engag[ed] in systematic wage and hour violations," including: (1) failing to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"); (2) failing to pay minimum wages in violation of the FLSA; (3) failing to pay overtime wages in violation of California law; (4) failing to pay minimum and regular wages in violation of California law; (5) failing to reimburse employees for business expenses in violation of California law; (6) failing to provide meal and rest breaks in violation of California law; (7) failing to provide proper itemized wage statements in violation of California law; (8) failing to pay wages within the required time pursuant to California law; (9) violations of California's Private Attorney General Act ("PAGA"); and (10) unfair competition in violation of California's Unfair Competition Law ("UCL"). Id., ¶¶ 18-88.

Specifically, Plaintiffs allege that Defendant failed to pay overtime and minimum wages for travel time, time spent waiting for company vans, and time spent on administrative tasks, including entering hours worked. E.g., id., ¶¶ 11, 21. Plaintiffs also allege that Defendant's timekeeping system prevented employees from being able to account for their time accurately and/or that Plaintiffs were subject to a process or procedure whereby their supervisors instructed them to enter work time incorrectly. Id. Plaintiffs further allege that the paystubs Defendant provided were inaccurate, that Defendant failed to pay wages promptly upon employees' termination or resignation, and that Defendant did not pay timely wages due to its employees. Id. Finally, Plaintiffs allege that Defendant did not reimburse Plaintiffs for business-related expenses, including cell phones, tablets, and other devices, as well as service plans for those devices, and that Defendant did not provide for meal and rest periods or adequately compensate Plaintiffs for missed meal and rest periods. Id., ¶¶ 14, 47. Plaintiffs seek general and special damages, including unpaid wages, liquidated damages, PAGA penalties, restitution, declaratory relief, an accounting, and reasonable attorneys' fees, costs, and interest. Id. at 31.

Plaintiffs have defined the class as all "current and former non-exempt California employees of Defendant who worked at least one day during the class period of June 4, 2010 to

the present." Id., ¶ 14. The class is comprised of a number of putative subclasses: the Wage Statement Subclass, Minimum Wage Subclass, Overtime Wage Subclass, Waiting Time Subclass, Unreimbursed Expenses Subclass, Meal Period Subclass, Rest Period Subclass, and the UCL Subclass. Id.

## II.   JURISDICTION

This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C § 1367.

## III.   CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). Here, because they rely on Rule 23(b)(3), Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. See Wal-Mart, 131 S. Ct. at 2551.

### A.   Rule 23(a)(1)—Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Numerosity is satisfied here because the proposed settlement class includes approximately 3,300 to 3,500 members. Decl. of Kevin Woodall ("Woodall Decl."), ECF No. 37, ¶ 60. Joinder of thousands of individuals would be impracticable.

In addition, while not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)). "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Id. (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

The settlement class is defined as:

> all persons who worked in California at least one day during the Class Period in any hourly non-exempt position for American Greetings Corporation, Papyrus-Recycled Greetings, Inc., AGCM, Inc. and/or Cloudco, Inc.

Woodall Decl., ¶ 60. The "Class Period" is defined as the period between June 4, 2010 and the date that this order issues. Id.

The Court finds that the class definition contained in the settlement agreement is adequately defined and ascertainable.

### B.    Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. Wal-Mart, 131 S. Ct. at 2556 (quotations and internal alterations omitted). The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (quotation omitted).

Plaintiffs identify a number of questions of law and fact common to the plaintiffs in this action, including:

> (1) whether Defendant failed to reimburse employees for cell phone, tablet and computer purchases, cell phone and internet plans,

mileage and meal expenses for overnight travel; (2) whether the foregoing expenses were necessary business expenses, which the failure to pay resulted in a violation of Labor Code § 2802; (3) whether Defendant's wage statements failed to include the correct total hours worked, the overtime rates of pay and the corresponding number of overtime hours, and the correct gross and net wages earned in the pay period; (4) whether Defendant's failure to include the foregoing violates Labor Code § 226; (5) whether Defendant failed to pay all minimum wages and overtime wages for time spent traveling, waiting for a company truck and other hours; (6) whether Defendant's failure to pay minimum wages and overtime compensation for all hours worked violated the FLSA and Labor Code §§ 1194, 1197, 510 and 558; (7) whether Defendant failed to provide meal and rest periods and premium pay for missed meal and rest periods; (8) whether the failure to provide meal and rest periods and premium pay violates Labor Code §§ 226.7 and 512; (9) whether Defendant willfully failed to pay all wages due to employees when their employment ended; (10) whether the failure to willfully pay all wages at the termination of employment violated Labor Code §§ 201-03; and (11) whether the foregoing violations of the Labor Code and FLSA were unlawful, unfair or fraudulent business practices in violation of Business & Professions Code § 17200.

Woodall Decl., ¶ 61. Plaintiffs have also identified a number of putative subclasses. See section I., supra. The questions of law and fact mentioned above correspond to particular subclasses.

The Court finds that the settlement satisfies the commonality requirement. Each of the questions that Plaintiffs have identified potentially applies to all class members. Commonality also is satisfied when the class is divided into subclasses. Fed. R. Civ. P. 23(c)(5); see also, e.g., Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 635-40 (S.D. Cal. 2010) (finding, in an employment action, that commonality was satisfied within wage-forfeiture, meal-and-rest-period, reimbursement, and derivative-claims subclasses).

Here, for each subclass, Plaintiffs have identified both the applicable law and the legal question arising under that law – for example, in the Unreimbursed Expenses Subclass, Plaintiffs have identified as the common legal question whether cell phone, tablet, and computer purchases, and cell phone and internet plans constitute "necessary business expenses, [for] which the failure to pay resulted in a violation of Labor Code § 2802." Moreover, individual legal questions are premised on common questions of fact. For example, within the Wage Statement Class, a common question of fact that would determine liability is how Defendant structured and displayed various items in the wage statements it provided to class members. And in the Unreimbursed

1   Expenses Subclass, the common question (assuming that Plaintiffs should be reimbursed for cell
2   phone, tablet, and computer expenses), is the extent and applicability of Defendant's policy
3   regarding these types of expenses.
4   Plaintiffs have satisfied the commonality requirement for the purposes of this settlement.

### C. Rule 23(a)(3)—Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court finds that the class representatives, Plaintiffs Al Smith and Jeffrey Hourcade, are typical of the class they seek to represent. They allege they suffered the same injuries, in the same manner, as the proposed class. Smith and Hourcade:

> were not reimbursed for cell phone, computer and tablet purchases, cell phone and internet plans, mileage and meal expenses for overnight travel. . . . Plaintiffs' wage statements . . . do not contain the correct total hours worked, the overtime rates of pay and the corresponding number of overtime hours, and the correct gross and net wages earned in the pay period. . . . Plaintiffs were not compensated for all travel time, all time spent waiting for a company truck and other hours, all of which remained unpaid after their employment ended. . . . Plaintiffs did not receive all 30-minute, uninterrupted meal periods that they were entitled to or premium pay for the missed meal periods.

Woodall Decl., ¶ 62. Plaintiffs have satisfied the typicality requirement.

### D. Rule 23(a)(4)—Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). The

requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13 (1982)). Among other functions, these requirements serve to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13.

No evidence in the record suggests that Smith or Hourcade have a conflict of interest with other class members. The named plaintiffs are typical of the class and share common claims with the class. They therefore have interests that "are so interrelated" with absent class members' interests that the latter "will be fairly and adequately protected."

Further, the evidence demonstrates that Plaintiffs' counsel, Kevin Woodall, is an adequate legal representative of the class. Woodall has specialized in labor and employment actions for the last seventeen years, has litigated on behalf of both defendants and plaintiffs, and has been voted one of "The Best Lawyers in the Bay Area in employment litigation." Woodall Decl., ¶¶ 53. 54. The evidence discloses no conflicts on Woodall's part, and the Court has no reason to believe that Woodall is otherwise than qualified and competent. The Court finds that proposed class counsel and the named Plaintiffs have and will continue to prosecute this action vigorously on behalf of the class. The adequacy requirement is therefore satisfied.

### E. Rule 23(b)(3)—Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (quotation omitted).

Here, the Court finds that the common questions raised by Plaintiffs' claims predominate over any questions affecting only individual members of the proposed class. In particular, Plaintiffs allege that Defendant: (1) provided class members inaccurate wage statements in violation of the California Labor Code, (2) did not reimburse class members for computers, cell phones, or tablets, or service plans for the same, though those expenses were "necessary" for the purposes of the California Labor Code; (3) failed to provide for meal and rest breaks or compensate employees with premium pay for missed breaks; (4) did not compensate class members for travel time, or time spent waiting for company vans; and (5) did not timely pay Plaintiffs wages owed upon termination or resignation. These common factual allegations form the basis of all of the class members' claims. The predominance requirement is therefore satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Id. at 1023. Here, because common legal and factual questions predominate over individual ones, the Court finds that the judicial economy achieved through common adjudication makes a class action superior to alternative procedures for adjudicating the claims of members of the proposed class.

Because each element of Rules 23(a) and 23(b)(3) are satisfied, the Court finds that conditional certification of the proposed settlement class is appropriate.

**F.     Appointment of Class Representatives and Class Counsel**

Because the Court finds that named Plaintiffs Smith and Hourcade meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints them as class representatives.

In addition, when a court certifies a class, the court must appoint class counsel and must consider:

(i)  the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the

8

class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Id., subsec. (B).

Plaintiffs' counsel has thus far vigorously prosecuted this action by: (1) filing and amending Plaintiffs' complaint three times; (2) investigating class members' potential claims; (3) propounding and reviewing discovery; (4) analyzing information Defendant provided in discovery; (5) participating in a full-day mediation session with Defendant; (6) deposing a former Area Supervisor who worked for Defendant; (7) interviewing witnesses; (8) negotiating this settlement agreement; and (9) briefing the instant motion for preliminary approval. Woodall Decl., ¶¶ 8, 10, 11, 12. In addition, as discussed in section III.D., supra, Plaintiffs' counsel has significant prior experience in employment litigation, including in prosecuting employment class actions. For these reasons, the Court will appoint Kevin Woodall as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

## IV.   PRELIMINARY APPROVAL OF CLASS SETTLEMENT

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276. Where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

1    The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Here, Plaintiffs ask the Court to take the first step in granting preliminary approval of the proposed settlement.

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." Id.

This settlement provides $4 million as a gross settlement amount, with the amount of

individual awards weighted according to the number of days individual class members worked during the class period. Woodall Decl., Ex. A, ¶ D.1. Attorneys' fees and costs, administrative costs, payments to the California Labor Workforce Development Agency, taxes due on settlement payments, and service payments to class representatives will be paid from the settlement fund. Id. Plaintiffs' counsel will seek $1.12 million in attorneys' fees, representing 28% of the gross settlement amount. Id., ¶ D.1.a. Plaintiff's counsel will also seek up to $10,000 in costs. Woodall Decl., ¶ 38. The settlement also provides for class representatives to receive $7,500 each, for the settlement administrator to be compensated up to $35,000, and for $37,500 to be paid to the Labor Workforce Development Agency. Id., Ex. A, ¶¶ D.1.b., c., d. [2]

Assuming the Court approves the proposed amounts, the remainder of the settlement fund, $2,782,500, will be distributed to class members on a pro rata basis according to the number of days each class member worked for Defendant during the class period. Id., ¶ D.1.e. If all class members receive their shares of the settlement, Plaintiffs expect individual class members to receive between $786 and $833. If only half of the class members participate in this settlement, those amounts increase to $1,572 and $1,666.

In exchange for settlement awards, unnamed class members will release Defendant from liability as to all federal, California, and other state-law claims that could have been asserted in this action or that arise out of or relate to the facts alleged in this action. Woodall Decl., Ex. A, ¶ A.33. Under the agreement, Smith and Hourcade will also agree to a broader release of claims than would unnamed class members, including all claims "arising out of or related to any act,

---

[2] Initially, the parties proposed that if the Court did not approve any of the foregoing amounts, the difference between what was requested and the amount the Court approved should be paid to Jewish Vocational Services, which "provides training, programs and resources to assist Bay Area job seekers in developing in-demand skills and confidence, making connections and finding jobs." Id. ¶¶ D.1.a., b., d, 16 n.1. After the April 30, 2015 preliminary approval hearing, the parties agreed to alter this part of their agreement. See ECF No. 53 at 1-2; ECF No. 54, Ex. A at 15-16. With the exception of any unspent remainder of the settlement administration fund, any funds the Court does not award as provided in the settlement agreement, including attorneys' fees, awards to class representatives, and costs, shall remain in the class fund and be distributed to class members in the same manner that the settlement fund will otherwise be distributed to class members. Id. Only then will any remainder of the settlement administration fund be awarded to Jewish Vocational Services. Id. The settlement provides for no reversion to Defendant. See Woodall Decl., Ex. A, ¶ D.1.

omission, event, fact or other thing related to, or arising from his employment and/or severance of employment with American Greetings and/or any subsidiary or affiliated business or entity . . . ." Id., ¶ C.5. Smith and Hourcade will also agree not to seek future employment by Defendant or its parents, subsidiaries, or affiliates. Id., ¶ C.6.

The Court finds that this settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079.

The first factor is the strength of the plaintiff's case. Plaintiffs' counsel's findings in discovery suggest that Plaintiffs' claims here have merit, at least assuming that Plaintiffs can prove any alleged violations on a class-wide basis and that Defendant would not prevail on its defenses. See ECF No. 36 at 3-7. For example, through discovery, "Plaintiffs confirmed they and other non-exempt employees in California were not reimbursed for the purchases of cell phones and other devices . . . used to make necessary entries on Defendant's system or the cell phone plans or internet plans purchased by employees for necessary, business related usage." Id. at 3-4. Further, "Plaintiffs discovered that their wage statements and those of the class do not list the correct overtime rates of pay and the corresponding hours worked at those rates of pay. . . . Defendant did not include any double time rate when class members worked over 12 hours per day and instead listed double those hours worked under the regular hours' section." Id. at 5-6. While the individual violations that Plaintiffs have identified, if proven, would not necessarily result in a large damages recovery, at least some of the claims can trigger statutory penalties, which can be significant. Accordingly, the Court finds that this factor weighs in favor of the settlement.

Second, the risk, expense, complexity, and likely duration of further litigation also weigh in favor of the proposed settlement. Here, Plaintiffs have asserted ten separate causes of action and they seek class certification for all ten claims. Further litigation of this case would necessarily be extensive and complex. Plaintiffs would also face the risk of denial of certification as to the entire class and as to individual subclasses. This factor weighs in favor of settlement.

Third, as mentioned above, Plaintiffs would face a significant risk in maintaining class

action status throughout trial. For example, with respect to Plaintiffs' meal-and-rest-period claims, Defendant "contends that it would be difficult to ascertain who was denied meal and rest periods, as Defendant maintained a policy that provided for meal and rest periods." ECF No. 36 at 9. Plaintiffs concede that, if "Defendant prevailed regarding the ascertainability issue, there would be no class related to the meal and rest period issues and no damages would be awarded." Id. The risk that Plaintiffs would be unable to certify each of the subclasses, and avoid decertification as the case proceeds, is significant. Accordingly, this factor weighs in favor of approval.

Fourth, Defendant has offered $4 million in total settlement of Plaintiffs' claims. The Court preliminarily finds that this amount is adequate. Plaintiffs estimate that if they prevailed on all of their claims, and recovered every penalty they seek in the maximum amount, they would receive approximately $9.65 million in damages, and $10.1 million in statutory penalties. See ECF No. 36 at 7-10. Plaintiffs also estimate that if Defendant prevailed on all of its defenses, Plaintiffs would only be entitled to $690,000 in damages, and somewhere between nothing and just over $5 million in penalties. See id.

Using Plaintiffs' estimate of the total potential recovery in the case, $4 million represents approximately 20% of the total maximum potential recovery that Plaintiffs would be entitled to if they prevailed on all claims. Nonetheless, the Court finds preliminarily that a settlement amount of $4 million appears reasonable, for at least three reasons. First, as a general matter, it is not unreasonable for a plaintiff to receive less in settlement than her total potential recovery at trial. In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). The lesser amount reflects the risk associated with trial, and also the time and effort that must be invested to go to trial; given the complexity of this case, that time and effort could be substantial. Second, just more than half of Plaintiffs' estimated best-case total recovery consists of statutory penalties. But Defendant has identified at least three theories pursuant to which those penalties could be reduced or eliminated. See ECF No. 36 at 10. Finally, Defendant has changed several of the practices Plaintiffs challenged in this litigation, id. at 12, so that the total "recovery" to Plaintiffs includes additional benefits beyond the payment of past monetary damages. Given the foregoing, the Court finds that the settlement amount weighs in favor of approving the settlement.

1    Fifth, the extent of discovery completed and the stage of the proceedings weigh in favor of
2    approving the settlement.  Though the settlement was reached prior to class certification, the
3    parties engaged in sufficient discovery "to make an informed decision about settlement."  Mego,
4    213 F.3d at 459 (citation omitted).  Plaintiffs propounded informal requests for documents and for
5    information on numerous topics, including, among other topics: (1) Defendant's policies and
6    procedures regarding expense reimbursements, meal and rest periods, time entries and travel time,
7    and wages of non-exempt employees, and all other wage and hour policies; (2) how the
8    aforementioned policies operate in practice; (3) Plaintiffs' personnel files, wage statements, and
9    time entries; (4) wage-statement and time-entry data for 10% of all non-exempt employees in
10   California who worked four or more months with Defendant; (5) information regarding how
11   Defendant's time-entry system worked; (6) Defendant's handbooks; (7) the percentage of shifts
12   over five hours for non-exempt employees; and (8) how often meals were paid for when non-
13   exempt employees travelled overnight.  See ECF No. 36 at 2-3.  Both Plaintiffs and Defendant
14   deposed a former Area Supervisor "who was familiar with Defendant['s] wage and hour policies
15   and procedures and supervised many employees in California."  Id. at 3.  Defendant also deposed
16   Plaintiffs Smith and Hourcade.  Id.  Additionally, Plaintiffs and Defendant interviewed
17   "numerous" witnesses.  Id.  As a result of information revealed during discovery, Plaintiffs have
18   amended their complaint three times, and have added three causes of action.

19   Sixth, Plaintiffs' counsel is experienced in wage-statement litigation, has actively
20   participated in the litigation of this action, and endorses the settlement.  Woodall Decl., ¶¶ 53, 54,
21   55, 59.

22   Finally, the Court must wait until the final approval hearing to gauge class members'
23   reaction to the settlement.[3]

24   The Court also finds that the parties' agreement with respect to attorneys' fees and service
25   enhancement awards for named Plaintiffs Smith and Hourcade falls "within the range of possible
26   approval."  The Court will evaluate the requests for fees and service enhancement awards at the

---

[3] No governmental actor is relevant to this action, so that factor is immaterial to the analysis.

1  final approval hearing, after Plaintiffs' counsel files his motion for fees and costs, and the class has
2  an opportunity to object.
3        Overall, and in light of the foregoing, the Court will preliminarily approve the settlement.

## V. CONDITIONAL APPROVAL OF NOTICE PLAN

The class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "The plaintiff must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). The notice must be "the best practicable," "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. (citations omitted). "The notice should describe the action and the plaintiffs' rights in it." Id. Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Id.

The parties propose to use Simpluris, Inc. as the claims administrator for the class. Woodall Decl., ¶ 49. Within thirty days of preliminary approval, the settlement agreement requires Defendant to provide Simpluris with the names, contact information, and number of weeks worked by all class members. Id., ¶ 41. Within ten days of Defendant providing this information, Simpluris will update class members' address information via a national address search. Id. Simpluris will then send each class member a notice packet by first-class mail. Id. The notice packet will contain a claim form and a notice form, which provides information regarding the claims asserted, the settlement, how to file a claim or opt-out of or object to the settlement, and the final approval hearing. Id.; see also id., Ex. C (Claim Form); ECF No. 54, Ex.

15

1   C (Notice of Proposed Class Action Settlement).  If any notice packets are returned as
2   undeliverable, Simpluris will update the addresses using a national address search and re-send the
3   notice packet.  Woodall Decl., ¶ 42.  Simpluris also will "calculate the awards of class members,
4   process opt-out requests and objections, mail settlement awards to class members, issue tax
5   reporting forms and withhold and remit any necessary taxes, [and] provide regular updates to
6   counsel for the parties and any necessary declarations regarding the relevant information."  Id., ¶
7   43 & Ex. A, ¶ D.3.b.

8         The notice form sent to class members states:  the nature of this action; the definition of the
9   class; the class claims, issues, and defenses; that a class member may enter an appearance through
10  an attorney if he or she so desires; that the Court will exclude from the class any member who
11  requests exclusion; the time and manner for requesting exclusion or objecting to the settlement;
12  the effect of requesting exclusion, objecting to the settlement, or doing nothing in response to the
13  notice; and the binding effect of a class judgment on class members.  Id., ¶ 46; ECF No. 54, Ex. C.
14  It also provides contact information for Simpluris and class counsel, the date of the final approval
15  hearing and that the date of the final approval hearing may change without further direct notice to
16  the class, and instructions as to how to access the Court's electronic filing system.  See ECF No.
17  54, Ex. C.

18        The proposed claim form identifies the case, provides Simpluris' mailing address, and
19  instructs class members to review the class notice, provide any updated address information and
20  their telephone numbers, and to sign and date the claim form.  ECF No. 42, Ex. C.  Further, the
21  claim form informs class members how their individual claims will be calculated and that
22  Simpluris will resolve any disputes between class members and Defendant as to the number of
23  days the class member worked during the class period.  Id.  The claim form also includes a
24  document entitled "Taxpayer Identification Number Certification—Substitute IRS Form W-9," on
25  which class members are to provide tax-related information, presumably so that Simpluris can
26  submit the proper tax documentation related to class members' individual recoveries under the
27  settlement.  Id.  To submit a claim form, class members must fill out the claim form in its entirety.
28  Id. at 1.  The claim form must be postmarked within sixty days after Simpluris mails notice

United States District Court
Northern District of California

16

1 packets. Woodall Decl., ¶ 44.

2 After notices are sent, but before the class period has closed, the parties will "take
3 additional steps to increase participation, including sending reminder postcards to class members
4 who have not responded," if "the parties determine the response rate is insufficient." Id., ¶ 45.

5 To opt-out of the settlement, putative class members must send a signed, written request to
6 Simpluris, stating that the class member has reviewed the class notice, identifying the case, and
7 providing the class member's name, address, and the last four digits of the class member's social
8 security number. ECF No. 54, Ex. C at 5 (revised notice). Opt-out requests must be postmarked
9 no later than sixty days after the date that notice was mailed. Id.

10 To object to the settlement, class members must submit, in writing, an explanation of all
11 the reasons the objector believes the Court should not approve the settlement, and state all facts in
12 support of the objection. See ECF No. 54, Ex. C at 7. An objector must identify the case, include
13 in the objection his or her name, address, and telephone number, and sign the objection. Id. An
14 objector must submit an objection within sixty days of the date Simpluris mails the notice packet.
15 Id.

16 The Court finds the parties' notice plan comports with due process requirements. See also
17 Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(3), the court must direct to class
18 members the best notice that is practicable under the circumstances, including individual notice to
19 all members who can be identified through reasonable effort."). In response to concerns the Court
20 expressed at the preliminary approval hearing, the parties revised their proposed notice form and
21 notice procedures. See ECF Nos. 52, 53, 54 & Exs. Those revisions bring the notice into
22 compliance with the Northern District's Procedural Guidance for Class Action Settlements, which
23 is available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance. The parties also
24 submitted to the Court a proposed envelope for use in mailing notice. See ECF No. 54, Ex. E.
25 The envelope is fashioned after the model envelope provided at the Federal Judiciary Center
26 website, which model was designed to maximize the likelihood that class members will open the
27 envelope and read the notice of class action settlement contained therein.

28 In light of the foregoing, the Court will approve the proposed notice form and notice

procedures.

## CONCLUSION

For the foregoing reasons, the Court hereby:

1. Grants preliminary approval of the settlement;

2. Conditionally certifies the proposed settlement class;

3. Approves the proposed notice program, and the content of the notices;

4. Approves and orders that the proposed opt-out and objection procedures be undertaken;

5. Appoints Smith and Hourcade as class representatives;

6. Appoints Kevin Woodall as class counsel; and

7. Sets the final approval hearing for December 17, 2015 at 2:00 p.m. Within thirty days of the date of this order, Defendant shall provide Simpluris the names, contact information, and number of weeks worked by class members. Within ten days of Simpluris' receipt of this information, Simpluris shall update class members' addresses using a national address search and mail notice packets to all class members. Class members shall have sixty days from the date of this mailing to file a claim form, request exclusion, or object to the settlement. If any notice packets are returned as undeliverable during this time period, Simpluris shall use a national address search to update those class members' addresses. Plaintiffs shall file their motion for final approval of the settlement, and their application for attorneys' fees, costs, expenses, and service awards no later than October 16, 2015.

IT IS SO ORDERED.

Dated: July 23, 2015

_____
JON S. TIGAR
United States District Judge