UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL SMITH, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMERICAN GREETINGS<br>CORPORATION,<br><br>                    Defendant. | Case No.  14-cv-02577-JST<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVES' SERVICE PAYMENTS**<br><br>Re: ECF Nos. 61, 66 |

Before the Court are Plaintiffs Al Smith and Jeffrey Hourcade's unopposed Motions for Final Approval of Class Action Settlement, Attorneys' Fees and Costs, and Class Representatives' Service Payments. ECF Nos. 61, 66. No class members have objected to the settlement, and ten class members have opted out. ECF No. 76, Supplemental Decl. of Stephen Gomez (Gomez Supp. Decl.) ¶ 3. The Court held a fairness hearing on December 17, 2015. ECF No. 75. The Court grants the motion for final approval and grants in part the motion for attorneys' fees, litigation costs, and service enhancement awards for the reasons discussed below.

## I.     BACKGROUND

Plaintiffs Al Smith and Jeffrey Hourcade bring this putative wage and hour class action against American Greetings Corporation on behalf of its current and former non-exempt California employees. ECF No. 51, Third Amended Complaint ¶ 1. In the present settlement, Plaintiffs seek penalties for violations of the Fair Labor Standards Act, California's Private Attorney General Act ("PAGA"), California's Unfair Competition Law, and various California employment statutes. Id. ¶¶ 10–88. Plaintiffs allege Defendant failed to compensate its employees for travel time spent on behalf of the company, time spent waiting for company vans, and time spent entering hours

worked.  Id. ¶¶ 19–56.  Plaintiffs also allege Defendant prevented employees from entering

accurate hours in Defendant's time system, and from taking mandatory meal and rest breaks.  Id.

¶¶ 19–56.  Thus, Plaintiffs claim their wage statements inaccurately reflected their actual time

worked.  Id. ¶¶ 40–41, 61–62.  Finally, Plaintiffs allege Defendant failed to reimburse Plaintiffs

for various expenses, including purchasing cell phones and computers that were "necessary to

perform [Plaintiffs'] expected work duties."  Id. ¶¶ 46–47.  A more detailed description of the

facts and claims at issue in this action can be found in the Court's July 23, 2015 Order.[1]  See ECF

No. 56.

In its July 23, 2015 Order, the Court: (1) granted preliminary approval of the parties'

proposed settlement agreement and conditionally certified the putative class for settlement

purposes; (2) appointed Plaintiffs Smith and Hourcade as class representatives; (3) appointed

Kevin Woodall ("Woodall") as class counsel; (4) approved the parties' proposed notice program

as well as the content of the notices; and (5) approved and ordered that they follow certain opt-out

and objection procedures.  ECF No. 56 at 18.[2]  On October 14, 2015, Plaintiffs moved for final

approval of the settlement, attorneys' fees and costs, and incentive payments of $7,500 for class

representatives Smith and Hourcade.  ECF Nos. 61, 66.

**A.      Settlement Agreement**

The proposed settlement agreement defines the class as:

> [A]ll persons who worked in California at least one day during the
> Class Period in any hourly nonexempt position for American
> Greetings Corporation, Papyrus-Recycled Greetings, Inc., AGCM
> Inc. and/or Cloudco, Inc.

ECF No. 54, Ex. A at 4.  The "Class Period" is June 4, 2010 through "the date the Court files its

Preliminary Approval Order," which the Court entered on July 23, 2015.  Id. at 5.  There are 3,743

class members.  ECF No. 76, Gomez Supp. Decl. ¶ 2.

Pursuant to the agreement, Defendant will create a settlement fund.  ECF No. 54, Ex. A at

---

[1] On July 27, 2015, the Court issued an amended Order that was substantively identical to the
Order issued on July 23, 2015.  See ECF No. 57.

[2] The pages refer to the pagination in the Court's Electronic Case Filing system.

United States District Court
Northern District of California

1   8–9.  The total settlement fund is $4,000,000, and from this the settlement agreement provides that

2   the following amounts will be subtracted: $1,120,000 in attorneys' fees; a maximum of $10,000 in

3   attorneys' costs, $35,000 in administrative costs; $7,500 as individual incentive awards for both

4   named plaintiffs; $37,500 in penalties paid to the California Labor & Workforce Development

5   Agency ("LWDA"); and any applicable payroll taxes.  Id. at 16–18.  The remaining amount will

6   be paid on a "pro rata" basis to "participating Class Members . . . based on the number of Days

7   Worked, as a fraction of the total days Worked of all Participating Class Members."  Id, at 18.

8   The data indicate that 44.10% of the class members have submitted claim forms, representing

9   71.06% of the Net Settlement Fund.  ECF No. 76, Gomez Supp. Decl. ¶ 2.  The average class

10  participant is currently slated to receive $1,615.01, while the highest amount that will be paid to a

11  class member is $6,322.72.  Id.

12  　　　　Class members who have not opted out of the settlement agree to release Defendant from:

13  
14  　　　　　　Any and all Claims, for any relief whatsoever . . . which the Named
           Plaintiffs or any Plaintiff Class Member has had, now has, or may
           have in the future against the Released Parties or any of them for
15         any acts occurring on or before the date on which the Court enters
           an order of final approval regarding this Settlement that were or
16         could have been asserted in the Action, or that are based upon, arise
           out of, or relate to any of the facts alleged or litigated in the Action,
17         including any that are based upon or arise out of the California
           Labor Code or any similar provision of federal, state or local law.

18  　　　　　　[This includes] any and all Claims arising on or before the date on
           which the Court enters an order of final approval regarding this
19         Settlement that relate to, are based on, or arise out of the facts and
           Claims alleged or litigated in the Action concerning the Named
20         Plaintiffs' or Plaintiff Class Members' compensation and/or other
           payments, including reimbursement for work related expenses,
21         received while employed by any Released Party including, but not
           limited to, Claims arising under or relating to (i) the wage-and-hour
22         provisions of the California Labor Code and the Wage Orders
           adopted by the California IWC, specifically including but not
23         limited to Claims under Labor Code sections 201, 202, 203, 204,
           204b, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 550–552, 558,
24         1194, 1194.2, 1197, 1197.1, 1198, 2802; (ii) the federal Fair Labor
           Standards Act, 29 U.S.C. §§ 206, 207, and its regulations; (iii)
25         conversion; and (v) [sic] Claims under Business and Professions
           Code sections 17200, et seq. and Labor Code sections 2698, et seq.
26         which are based on the Claims that were or could have been alleged
           in the Action or which are additionally sought to be asserted as part
27         of this Agreement in the Action, or that arise out of or relate to the
           facts alleged in the Action.
28

1    ECF No. 54, Ex. A at 8–9.

2            As part of the settlement arrangement, Defendant also agree not to oppose Plaintiffs'

3    application for attorneys' fees and class representative payments.  Id. at 15–16.

4        **B.    Jurisdiction**

5            The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331

6    and 29 U.S.C. § 216(b).  The Court has supplemental jurisdiction over Plaintiffs' state-law claims

7    under 28 U.S.C § 1367.

8    **II.    FINAL APPROVAL OF THE SETTLEMENT**

9        **A.    Legal Standard**

10           "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

11   approval."  FED. R. CIV. P. 23(e).  "Adequate notice is critical to court approval of a class

12   settlement under Rule 23(e)."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998).  In

13   addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is

14   fundamentally fair, adequate, and reasonable."  Id. at 1026.  In order to assess a settlement

15   proposal, the district court must balance a number of factors:

16           (1) the strength of the plaintiffs' case; (2) the risk, expense,
             complexity, and likely duration of further litigation; (3) the risk of
17           maintaining class action status throughout the trial; (4) the amount
             offered in settlement; (5) the extent of discovery completed and the
18           stage of the proceedings; (6) the experience and views of counsel;
             (7) the presence of a governmental participant; and (8) the reaction
19           of the class members to the proposed settlement.

20   Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).[3]

21           Settlements that occur before formal class certification also require a higher standard of

22   fairness.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such

23   settlements, in addition to considering the above factors, the court also must ensure that "the

24   settlement is not the product of collusion among the negotiating parties."  In re Bluetooth Headset

25   Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

26

27

28
_____

[3] There is no governmental participant in this case, so the Court need not consider this factor.

4

United States District Court
Northern District of California

1

### B. Analysis

2

The Court finds that the proposed settlement is fair, adequate, and reasonable.

3

#### 1.    Adequacy of notice

4

"The class must be notified of a proposed settlement in a manner that does not

5

systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of

6

City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

7

Here, the court previously approved the parties' proposed plan for providing notice to the

8

class. ECF No. 57.[4]  The parties have shown that the class administrator, Simpluris, has carried

9

out the notice plan approved by the court by preparing the class list, mailing notice to the class

10

members via first class mail, and performing address traces to re-mail the notice to class members

11

whose mail was returned undeliverable. ECF No. 63, Declaration of Stephen Gomez (Gomez

12

Decl.) ¶¶ 2–5; see also ECF No. 62 at 13–14. As of October 13, 2015, only 23 of the 3,743

13

notices (representing 0.6% of the class) remain undeliverable due to the inability to identify a

14

current address. ECF No. 63, Gomez Decl. ¶ 5. The class administrator also "mailed postcard

15

reminders to those Class members who had not yet filed a Claim Form, opted out of the settlement

16

or objected to the settlement." Id.  ¶ 4.

17

In light of the foregoing, the Court finds that the parties have sufficiently provided the best

18

practicable notice to the settlement class members. See Lundell v. Dell, Inc., Case No. 05–3970

19

JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and

20

first class mail constituted the "best practicable notice" and satisfied due process requirements);

21

see also Boring v. Bed Bath & Beyond, No. 12-CX-05259-JST, 2014 WL 2967474, at *1 (N.D.

22

Cal. June 30, 2014) (finding adequate notice where parties implemented approved notice plan and

23

only "twenty-seven of the 1,374 class notices [representing 1.97% of the notices initially sent]

24

were returned undeliverable after a second attempt and a skip trace").

25

26
27
28

[4] On September 15, 2015, the parties submitted a Case Management Statement informing the Court of errors in identifying class members and administering class notices and claim forms. See ECF No. 58.  Seventeen class members were not originally identified as such and so did not receive class notice or a claim form.  Thirty class members received claim forms that listed an incorrect number of days worked.  These errors were fixed by providing supplemental notice. Id.; ECF No. 60.

United States District Court
Northern District of California

1          **2.      Fairness, adequacy, and reasonableness**

2                  **a.      Strength of Plaintiffs' case**

3          Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

4    must overcome in making their case." Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848,

5    851 (N.D. Cal. 2010).

6          Here, Plaintiffs acknowledge that if the settlement is not approved, they will encounter

7    significant obstacles in establishing their claims in light of uncertainties surrounding class

8    certification, ascertainability, and proof of damages for various issues.  See ECF No. 62 at 16.

9    Plaintiffs, for example, acknowledge it would be difficult to prove damages for their inaccurate

10   wage statement claims because a jury might find that the class members, rather than Defendant,

11   were at fault for inaccurately recording time.  Id.  These acknowledged weaknesses weigh in favor

12   of approving the settlement.  See Moore v. Verizon Communications Inc., C 09–1823 SBA, 2013

13   WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored

14   settlement because plaintiff admitted that it would face hurdles in establishing class certification,

15   liability, and damages).

16                 **b.      Risk of continued litigation**

17         Difficulties and risks in litigating weigh in favor of approving a class settlement.  See

18   Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

19         This factor supports granting final approval of the settlement because if the parties did not

20   settle, Plaintiffs would have to proceed through class certification, summary judgment and trial.

21   ECF No. 62 at 16–17. This case already has lasted sixteen months, and no alternative resolution is

22   imminent.  Plaintiffs have asserted ten separate causes of action and they seek class certification

23   for all ten claims.  See ECF No. 56 at 12.  Thus, further litigation of this case would necessarily be

24   extensive and complex.  Id.

25                 **c.      Risk of maintaining class action status**

26         It seems likely that if the Court did not approve this settlement, Defendant would challenge

27   certification for some or all of the subclasses.  Defendant maintains, for example, that "it would be

28   difficult to ascertain who was denied meal and rest periods."  ECF No. 36 at 15.  Plaintiffs

United States District Court
Northern District of California

United States District Court
Northern District of California

1    concede that, if "Defendant prevailed regarding the ascertainability issue, there would be no class

2    related to the meal and rest period issues and no damages would be awarded." Id.  The potential

3    difficulties associated with maintaining class certification in this case weigh in favor of approving

4    the settlement.  See McKee Foods, 716 F. Supp. 2d at 851 (holding that this factor supports

5    approving a settlement when both parties acknowledge the possibility of decertification).

6                          **d.       Settlement amount**

7           It is "well-settled law that a cash settlement amounting to only a fraction of the potential

8    recovery does not per se render the settlement inadequate or unfair." In re Omnivision Techs Inc.,

9    559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008).

10          The Court previously concluded that the amount of the settlement was within the range of

11   possible approval.  ECF No. 57 at 13.  $4 million represents approximately 20% of the total

12   maximum potential recovery to which Plaintiffs would be entitled if they prevailed on all claims.

13   Id.  Excluding PAGA penalties—which Defendant may be able to significantly reduce if this case

14   proceeds to trial—the settlement represents approximately 42% of the maximum potential

15   damages.  ECF No. 64, Declaration of Kevin Woodall (Woodall Decl.) ¶ 55; see also ECF No. 62

16   at 15.

17          Plaintiffs here can obtain the maximum amount of potential penalties only by meeting

18   heightened standards of proof—e.g., that Defendant willfully violated the Labor Code.  Defendant

19   has indicated it will challenge Plaintiffs' request for PAGA penalties on several grounds,

20   including lack of intent.  ECF No. 64 at 9–10 (noting Defendant's assertions that class members

21   are not entitled to reimbursement or PAGA penalties for many claimed expenses).  Further,

22   Plaintiffs will recover as a class only if they obtain certification for any of their ten claims, which

23   may be difficult given Plaintiffs' concerns about ascertainability.  ECF No. 62, MPA at 12.

24   Moreover, as the Court noted in its Order preliminarily approving the settlement, Defendant has

25   changed many of the practices Plaintiffs challenged as illegal in this litigation, ECF No. 64 at 12,

26   making the total "recovery" to Plaintiffs include additional benefits beyond monetary damages.

27          Because of the risk, expense, complexity, and likely duration attached to the litigation of

28   these claims, the Court finds that a settlement based on this fraction of potential recovery is fair

7

1   and reasonable.

2                           e.        **Extent of discovery**

3          "In the context of class action settlements, 'formal discovery is not a necessary ticket to the

4   bargaining table' where the parties have sufficient information to make an informed decision

5   about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation

6   omitted).

7          Here, Plaintiffs assert "there has been a significant amount of informal written discovery,

8   three depositions and interviews of many witnesses." ECF No. 62 at 20.  Through this discovery,

9   Plaintiffs "obtained an extensive data sample of wage statements and time entries equivalent to

10  roughly 10 percent of the Class, all applicable policies and procedures, and detailed information

11  relating to the applicable employment practices." Id.   According to the attorneys' time sheets,

12  they cumulatively spent hundreds of hours analyzing and collecting this data over the course of the

13  litigation.  ECF No. 68, Woodall Decl. at 9; ECF No. 71, Makarin Decl. at 3.  Class counsel also

14  conducted numerous interviews of class members, as well as attended a mediation session.  Id.

15         The Court finds that the parties conducted sufficient discovery to make an informed

16  decision regarding the settlement's adequacy.  See In re Omnivision, 559 F. Supp. 2d at 1042

17  (finding the parties were sufficiently informed about the case prior to settling because they

18  engaged in discovery, took depositions, briefed motions, and participated in mediation).

19                          f.        **Counsel's experience**

20         "The recommendations of plaintiffs' counsel should be given a presumption of

21  reasonableness." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

22         Here, class counsel have demonstrated that they are sufficiently informed about the current

23  dispute and that Mr. Woodall has more than 20 years of experience defending and prosecuting

24  class actions.  See ECF No. 62 at 21.  No party has provided the court with any evidence

25  contradicting the notion that class counsel's recommendations are reasonable.  In light of the

26  foregoing, class counsel's support for the settlement weighs in favor of approving the settlement.

27  See e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in

28  favor of settlement to be presumptively reasonable because they demonstrated knowledge about

United States District Court
Northern District of California

1   the case and securities litigation in general).

2                    **g.       Reaction of the class**

3           Class members' positive reaction to a settlement weighs in favor of settlement approval.

4   "[T]he absence of a large number of objections to a proposed class action settlement raises a

5   strong presumption that the terms of a proposed class settlement action are favorable to the class

6   members."  Id. (citation omitted).

7           In this case, of 3,743 class members, only 10 (0.27%) have opted out of the settlement and

8   none have objected.  ECF No. 76, Gomez Supp. Decl. ¶ 2.  Currently, 44.10% of class members

9   have submitted claim forms.  Id.  Given the class members' positive reaction, the Court finds that

10  the settlement is favorable to the class members.  See e.g., McKee Foods Corp., 716 F. Supp. 2d at

11  852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Village LLC v. Gen.

12  Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45

13  objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

14          Balancing these factors, the Court finds the settlement fair and reasonable.

15                  **3.       Absence of collusion**

16          Because this settlement was reached prior to class certification, the Court must examine the

17  settlement for evidence of collusion with a higher level of scrutiny.  In re Bluetooth, 654 F.3d at

18  946.  In conducting such an examination, courts must be "particularly vigilant not only for explicit

19  collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-

20  interests and that of certain class members to infect the negotiation."  Id.  Signs of collusion

21  include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a

22  "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant

23  rather than to be added to the settlement fund.  Id. at 947.  If "multiple indicia of possible implicit

24  collusion" are present, a district court has a special "obligat[ion] to assure itself that the fees

25  awarded in the agreement were not unreasonably high."  Id.[5] (citing Staton v. Boeing Co., 327

26

27  _____
    [5] In re Bluetooth, 654 F.3d at 947–49, class counsel to a products liability class action requested
28  $800,000 in attorneys' fees as compared to $100,000 in *cy pres* relief and no direct monetary
    compensation to the class.  The settlement included a "'clear sailing agreement,' by which

United States District Court
Northern District of California

1    F.3d 938, 965 (9th Cir. 2003).

2         As to the first factor, in common fund settlements, the Ninth Circuit sets a "benchmark"

3    fee award at 25% of the recovery obtained.  See In re Online DVD-Rental Antitrust Litig., 779

4    F.3d 934, 949 (9th Cir. 2015); In re Bluetooth Headset Prods. Liab. Litig., 645 F.3d 935 (9th

5    Cir.2011).  As discussed in further detail in Section III.B of this Order, several factors support an

6    upward departure from the benchmark.  The Court finds that 28% is not a "disproportionate

7    amount."

8         As to the second factor, the settlement agreement contains a clear sailing provision.  The

9    agreement states Defendant will not "oppose [Plaintiffs'] application" for attorneys' fees and class

10   representative payments.  ECF No. 54, Ex. A at 15–16.  "Although clear sailing provisions are not

11   prohibited, they 'by [their] nature deprive . . . the court of the advantages of the adversary process'

12   in resolving fee determinations and are therefore disfavored."  In re Bluetooth, 654 F.2d at 949

13   (quoting Weinberger v. Great Northern Nekoosa Corp., 925 F.3d 518, 525 (1st Cir. 1991)).  When

14   "confronted with a clear sailing provision, the district court has a heightened duty to peer into the

15   provision and scrutinize closely the relationship between attorneys' fees and benefits to the class,

16   being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."

17   Id. at 948 (citing Staton, 327 F.3d at 954).

18        However, a "clear sailing provision does not signal the possibility of collusion where, as

19   here, Class Counsel's fee will be awarded by the Court from the same common fund as the

20   recovery to the class."  In re High-Tech Employee Antitrust Litigation, 11-cv-02509-LHK, 2015

21   WL 5158730, at *14 (N.D. Cal. Sep. 2, 2015) (internal quotations omitted) (citing Rodriguez v.

22   West Publ'g Corp., 563 F.3d 948, 961 n.5 (9th Cir. 2009)); see also Bayat v. Bank of the West,

23   No. C-13-2376 EMC, 2015 WL 1744342, at *7 (N.D. Cal. Apr. 15, 2015) ("because any

24

25   _____

26   defendants agreed not to object to an award of attorneys' fees up to eight times the monetary *cy
     pres* relief afforded the class."  Id. at 947.  The "settlement also contained a 'kicker,'" which
     provided that "all fees not awarded would revert to defendants rather than be added to the *cy pres*
27   fund or otherwise benefit the class."  Id.  The Ninth Circuit overturned the district court's approval
     of the settlement, and remanded the case for the district court to scrutinize the settlement using
28   these three factors.  Id. at 949.

United States District Court
Northern District of California

1    attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here

2    that would warrant against settlement approval"). This factor therefore does not weigh against

3    settlement approval. See ECF No. 54, Ex. A at 16 ("These fees and costs are included in, and

4    shall come from, the Settlement Fund").

5          As to the third factor, there is no kicker arrangement whereby "unpaid attorneys' fees"

6    would revert back "to the defendant rather than to the class." In re Bluetooth, 654 F.3d at 949.

7    Instead any remaining funds will be distributed among the claimants on a pro rata basis. See ECF

8    No. 54, Ex. A at 16 ("To the extent attorneys' fees are not approved in the full amount set forth

9    above, then the amount not approved shall remain in the Net Settlement Fund for distribution to

10   Participating Class Members").

11         As none of the three signs of collusion weigh against approving the settlement, the Court

12   finds the settlement fair and reasonable.

## III.    ATTORNEYS' FEES

### A.    Legal Standard

15         "Where a settlement produces a common fund for the benefit of the entire class, courts

16   have discretion to employ either the lodestar method or the percentage-of-recovery method." In re

17   Bluetooth, 654 F.3d at 942; see Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 27

18   (2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund

19   cases."). "The lodestar figure is calculated by multiplying the number of hours the prevailing

20   party reasonably expended on the litigation (as supported by adequate documentation) by a

21   reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth, 654

22   F.3d at 941. "Because the benefit to the class is easily quantified in common-fund settlements,"

23   courts can "award attorneys a percentage of the common fund in lieu of the often more time-

24   consuming task of calculating the lodestar." Id. at 942.

25         "[E]ven though a district court has discretion to choose how it calculates fees . . . it abuses

26   that discretion when it uses a mechanical or formulaic approach that results in an unreasonable

27   reward." In re Bluetooth, 654 F.3d at 944 (internal quotation marks omitted). Thus, the Ninth

28   Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their

1    calculations against a second method." Id.; see also In re Sutter Health Uninsured Pricing Cases,

2    171 Cal. App. 4th 495, 512 (2009) (affirming attorneys' fee award calculated as a percentage-of-

3    recovery with a lodestar cross-check).

4         **B. Analysis**

5         The settlement fund totals $4,000,000.  Class counsel seeks 28% in attorneys' fees, totaling

6    $1,120,000.

7         When using a percentage-of-recovery method, "courts typically calculate 25% of the fund

8    as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of

9    any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (citations

10   omitted).  Plaintiffs here contend that, despite the fact that their requested amount exceeds the

11   25% benchmark, the significant benefit obtained on behalf of the class, the complexity of the

12   litigation, and counsel's assumed risk (taking the case on contingency) support a departure from

13   25%.  ECF No. 67 at 13–20.

14        Courts typically consider five factors when determining whether to depart from the 25%

15   benchmark.  In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954–55 (9th Cir. 2015)

16   (stating that courts can consider whether class counsel "'achieved exceptional results for the

17   class,' whether the case was risky for class counsel, whether counsel's performance 'generated

18   benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some

19   circumstances), the burdens class counsel experienced while litigating the case (e.g., cost,

20   duration, foregoing other work), and whether the case was handled on a contingency basis")

21   (quoting Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047–50 (9th Cir. 2002)).

22        "[T]he most critical factor [in determining appropriate attorneys' fee awards] is the degree

23   of success obtained." Hensley, 461 U.S. at 436; see Bayat, 2015 WL 1744342, at *8 (refusing to

24   award 25% of the settlement fund in attorneys' fees because the "monetary relief [was] less than

25   1% of the full potential verdict value, and less than 2% of the class [would] receive any monetary

26   benefit").  Here, Plaintiffs' counsel contends that, in response to the suit, Defendant (1) "corrected

27   its wage statements by listing the accurate number of overtime and double time hours worked," (2)

28   "set a firm deadline for [employee time entry] and will enforce it," (3) "changed its practice for

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1   reimbursements such that Class Members will have an opportunity to input the actual mileage to

2   be reimbursed instead of relying upon estimates linked to the travel time," (4) "agreed to revise its

3   business reimbursement policy with respect to internet access," and (5) will remind and

4   "encourage employees to take meal/rest periods."  ECF No. 67 at 14–15.  Plaintiffs claim the

5   "changed reimbursement policies will save Class Members and future employees an estimated

6   $3.25 million over the next four years" alone.  Id. at 15.

7        The Court agrees that these case-specific benefits are substantial.  As the Court noted in its

8   Order granting preliminary approval of the settlement, some of Plaintiffs' primary allegations

9   were that Defendant failed to pay "overtime and minimum wages for travel time, time spent

10  waiting for company vans, and time spent on administrative tasks," and that Defendant also failed

11  to accurately maintain employee paystubs and prevented employees from being able to accurately

12  record their time.  ECF No. 56 at 2.  In addition to compensating Plaintiffs for lost wages, class

13  counsel's efforts have remedied many of the corporate policies that led to this lawsuit.

14       These benefits support an upward departure from the Ninth Circuit's 25% standard.

15  Compare Larsen v. Trader Joe's Company, No. 11-cv-05188-WHO, 2014 WL 3404531, at *9

16  *N.D. Cal. July 11, 2014) (granting request for 28% in attorneys' fees when the litigation

17  convinced Defendant to stop the offending practice that led to the suit), with Moore v. PetSmart,

18  Inc., No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *11 (N.D. Cal. Aug. 4, 2015) (refusing to

19  award the requested 33% of the settlement funds for attorneys' fees—and instead awarding 27%—

20  because while counsel obtained a high benefit for the class, "the injunctive relief obtained is not of

21  the type that would incur a significant change in policy or practice on behalf of PetSmart").  It is

22  also notable that the settlement represents 20% of the class's maximum possible recovery for all

23  ten claims, including all possible PAGA penalties.  See In re Omnivision, 559 F. Supp. 2d at 1046

24  (concluding that a settlement representing 9% of all possible damages in a securities class action

25  weighed in favor of granting 28% in attorneys' fees).

26       Finally, "the lack of objection from any Class Member supports the attorneys' fee award."

27  In re Immune Response, 497 F.Supp. 2d 1166, 1177 (S.D. Cal. May 31, 2007).

28       Balancing the relevant factors, the Court finds that Plaintiffs' requested attorneys' fees are

13

1    reasonable under the percentage-of-recovery method.

2        The Court now cross-checks the percentage award against the lodestar.  Plaintiffs' counsel

3    claim their total lodestar is $622,705.  ECF No. 67 at 24.  Woodall and Makarin's affidavits

4    discuss the hours spent on the case, with descriptions for each sub-task.  ECF Nos. 68, 71.

5    Plaintiffs' attorneys use a Laffey matrix to support counsel's hourly billing rates.[6]  ECF No. 68,

6    Ex. A.

| Attorney | Billing Rate | Number of Hours | Amount |
|---|---|---|---|
| Kevin Woodall | $725 | 627.1 | $454,647.50 |
| Sean Makarin | $325 | 517.1 | $168,057.50 |
| | | 1,125.2 | $622,705.00 |

10       Based on Plaintiffs' requested $1,120,000 figure, the lodestar multiplier in this case is

11   approximately 1.8, which is within the range of awards in similar cases.  See Vizcaino, 290 F.3d at

12   1051 n.6 (noting that the majority of class action settlements approved had fees multipliers that

13   ranged between 1.5 and 3); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334 (N.D. Cal.

14   2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83); In re Google Referrer

15   Header Privacy Litig., No. 5:10–CV–04809–EJD, 2015 WL 1520475, at *10 (N.D. Cal. Mar. 31,

16   2015) (lodestar multiplier of 2.2).  Additionally, the requested award would not "yield windfall

17   profits for class counsel in light of the hours spent on the case."  In re Bluetooth, 654 F.3d at 942;

18   see also Custom LED, LLC v. eBay, Inc, No. 12-CV-00350-JST, 2014 WL 2916871, at *9 (N.D.

19   Cal. June 24, 2014) (approving a 1.94 multiplier of the lodestar for a $4,750,000 settlement fund).

20       The Court concludes that an attorneys' fee award of $1,120,000, or 28% of the settlement

21   fund, is reasonable.

22

23

24

25   _____

26   [6] The reasonable hourly rate for computing the lodestar amount is based on the "prevailing market
     rates in the relevant community."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir.
     2013).  In the present case, "the relevant community is the Northern District of California where
27   reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and
     paralegals and litigation support staff range from $150 to $240."  PetSmart, 2015 WL 5439000, at
28   *12.  The billing rates are within the range approved in this district.

United States District Court
Northern District of California

1    IV.    COSTS

2          A.    Legal Standard

3          An attorney is entitled to "recover as part of the award of attorney's fees those out-of-

4    pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24

5    F.3d 16, 19 (9th Cir. 1994) (citation omitted).  To support an expense award, Plaintiffs should file

6    an itemized list of their expenses by category and the total amount advanced for each category,

7    allowing the Court to assess whether the expenses are reasonable.  Wren v. RGIS Inventory

8    Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011),

9    supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

10         B.  Analysis

11         Here, Plaintiffs provided a list of costs incurred during this litigation, separated by

12   category.  ECF No. 68 at 13; ECF No. 66, Ex. E.  The expenses consist of fees for deposition

13   transcripts, hiring a mediator, filing court documents, and miscellaneous mail and copying costs,

14   which Plaintiffs support with receipts.  Id.  Overall, the Court finds the charged costs reasonable.

15   The Court therefore holds that Woodall is entitled to reimbursement of $8,047.25.  As the

16   settlement agreement provided for a maximum recovery of $10,000 in attorneys' costs, ECF No.

17   54, Ex. A at 15, the remaining $1,952.75 will be added to the Net Settlement Fund.

18   V.     SERVICE AWARDS

19         A.    Legal Standard

20         "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

21   are eligible for reasonable incentive payments." Staton, 327 F.3d at 977.  "Incentive awards are

22   discretionary . . . and are intended to compensate class representatives for work done on behalf of

23   the class, to make up for financial or reputational risk undertaken in bringing the action, and,

24   sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563

25   F.3d at 958–59 (internal citation omitted).  Courts evaluate incentive awards individually, "using

26   relevant factors including the actions the plaintiff has taken to protect the interests of the class, the

27   degree to which the class has benefitted from those actions, the amount of time and effort the

28   plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation."

United States District Court
Northern District of California

15

1    <u>Staton</u>, 327 F.3d at 977 (citation and internal quotations and alterations omitted).  Indeed, "courts

2    must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

3    adequacy of the class representatives."  <u>Radcliffe v. Experian Info. Solutions, Inc.</u>, 715 F.3d 1157,

4    1164 (9th Cir. 2013).

5         **B.     Analysis**

6         Plaintiffs request awards of $7,500 each for Smith and Hourcade.  ECF No. 67 at 25–26.

7    These amounts exceed typical incentive awards in the Ninth Circuit, where $5,000 is

8    presumptively reasonable.  <u>See</u> <u>Harris v. Vector Marketing Corp.</u>, No. C-08-5198 EMC, 2012 WL

9    381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that

10   incentive payments of $10,000 or $25,000 are quite high and /or that, as a general matter, $5,000

11   is a reasonable amount") (citations omitted).

12        Plaintiffs assert that $7,500 is appropriate for several reasons:

13            Smith and Hourcade spent many hours providing much needed facts
             and information, preparing for and having their depositions taken,
14           and reviewing and signing multiple versions of the settlement
             agreement . . . each of them spent approximately 20-25 hours on this
15           case.  Equally important, they acted as private attorneys general in
             prosecuting the PAGA claims, took off from work to attend their
16           depositions, and have remained involved in the case for over 16
             months.  [They] also subjected themselves to a negative reputation
17           with their employers and prospective employers by bringing this
             lawsuit.  Unlike the other Class members, [] Smith and Hourcade
18           released all known and unknown claims that could be brought
             against Defendant, not just the claims in this litigation, and gave up
19           their right to seek future employment with Defendant [].  Finally, the
             amounts sought are a tiny fraction of the $4,000,000 Settlement
20           Fund, and are not significantly more than the average class member
             will obtain.
21
     ECF No. 67 at 26–27 (internal citations omitted).
22
          While the Court acknowledges these points, it will not award Smith and Hourcade $7,500
23
     for several reasons.  First, to determine the reasonableness of a requested incentive payment,
24
     courts consider the proportionality between the incentive payment and the range of class
25
     members' settlement awards.  <u>Burden v. SelectQuote Insurance Services</u>, No. 10-cv-5966-LB,
26
     2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013).  The Settlement Administrator projected that
27
     the average class participant currently is slated to receive $1,608.16.  ECF No. 76, Gomez Supp.
28

United States District Court
Northern District of California

1    Decl. ¶ 2.  The proposed $7,500 amounts to roughly 4.7 times this amount.

2          While 4.7 times the average class member is not an extraordinary ratio, the modest amount

3    of time Smith and Hourcade expended on the litigation weighs in favor of a $5,000 award.

4    Hourcade estimates he spent 20 hours on the case and Smith estimates he spent 20-25 hours on the

5    case.  ECF No. 69, Hourcade Decl. ¶ 4; ECF No. 70, Smith Decl. at ¶ 4; see Willner v. Manpower

6    Inc., No. 11-cv-02846-JST, 2015 WL 3863625, at *8 (N.D. Cal. June 20, 2015) (awarding $7,500

7    to a class representative who contributed 54 hours to the litigation over four years, sat for a day-

8    long deposition, and responded to written discovery requests, among other tasks); Fleury v.

9    Richemont N. Am., Inc., No. C-05-4325 EMC, 2008 WL 3287154, at *6 (N.D. Cal. Aug 6, 2008)

10   (awarding $5,000 where class representative was involved in litigation for three years, sat for a

11   deposition, responded to written discovery, and attended a mediation session); Burden, 2013 WL

12   3988771, at *6 (awarding class representative $5,000, even though they had sat for two

13   depositions and spent a total of 80 hours on the case).

14         The Court finds that the enhancement award of $5,000 each is appropriate to compensate

15   Smith and Hourcade for the time and effort they spent in connection with this litigation and the

16   risks they took on behalf of their fellow class members.  The residual $5,000 will be added to the

17   Net Settlement Fund.

18   **VI.    SETTLEMENT ADMINISTRATION COST/CY PRES**

19         Pursuant to the settlement terms:

20              Subject to Court approval, an amount of Thirty-Five Thousand
                Dollars and No Cents ($35,000.00) will be set aside from the
21              Settlement Fund to cover any of the Settlement Administrator's
                costs of administering the Settlement.  If any portion of this amount
22              remains after 60 days following the Effective Date, such remaining
                amount shall be donated to Jewish Vocational Services.
23
     ECF No. 54, Ex. A at 17.  Spread out among the identified 3,743 class members, this amounts to
24
     $9.35 per class member.
25
           Courts regularly award administrative costs associated with providing notice to the class.
26
     See, e.g., Odrick v. Union Bancal Corp., No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal.
27
     Dec. 3, 2012).  Given that the average class participant will recover approximately $1,608.16, the
28

                                                     17

1    Court concludes that these costs are reasonable and incurred for the benefit of the class.  The Court

2    approves these costs.

3         The modest cy pres award is also appropriate.  "Given the wage-and-hour nature of this

4    action, the work performed by [Jewish Vocational Services] bears a substantial nexus to the

5    interests of the class members and is sufficiently related to the nature of Plaintiffs' lawsuit."

6    PetSmart, 2015 WL 5439000, at *8.[7]  The Court approves a *cy pres* award to Jewish Vocational

7    Services as set forth above.

## VII.   PAYMENT TO THE LABOR WORKFORCE DEVELOPMENT AGENCY

9         The parties have agreed that $37,500 from the settlement fund will be paid to the

10   California LWDA, as "civil penalties under the Labor Code Private Attorneys General Act of

11   2004."  ECF No. 54, Ex. A at 17.  The Court approves the payment.

**CONCLUSION**

13   For the foregoing reasons, the Court orders as follows:

14   1.    For the reasons set forth in its July 27, 2015 order, the Court confirms its
            certification of the class for settlement purposes only.

16   2.    The Court grants final approval of the proposed settlement.

17   3.    The Court grants incentive awards of $5,000 each to Plaintiffs Al Smith and Jeffrey
            Hourcade.

19   4.    The Court grants Plaintiffs' counsel $1,120,000 in attorneys' fees.

20   5.    The Court grants Plaintiffs' counsel $8,047.25 in litigation costs.

21   6.    The Court grants $35,000 in settlement administration costs to be paid from the
            settlement fund.

23   7.    The Court grants $37,500 to be paid to the California LWDA from the settlement
            fund as PAGA penalties.

24   8.    Class members who asked to opt out of the settlement are excluded from the class.

25   9.    The Court retains continuing jurisdiction over this settlement solely for the
            purposes of enforcing this agreement, addressing settlement administration matters,

---

[7] As the Court noted in its order preliminarily approving this settlement, the parties initially
proposed a much larger *cy pres* award.  ECF No. 56.  Now only the unspent remainder of the
settlement administration fund, if any, will be devoted to this purpose.

18

United States District Court
Northern District of California

United States District Court
Northern District of California

and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

10.    Judgment is hereby entered on the terms set forth above. The clerk shall close the file.

IT IS SO ORDERED.

Dated:  January 29, 2016

_____
JON S. TIGAR
United States District Judge

19