UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AL SMITH, et al.,

            Plaintiffs,

    v.

AMERICAN GREETINGS CORPORATION,

            Defendant.

Case No.  14-cv-02577-JST

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVES' SERVICE PAYMENTS**

Re: ECF Nos. 61, 66

Before the Court are Plaintiffs Al Smith and Jeffrey Hourcade's unopposed Motions for Final Approval of Class Action Settlement, Attorneys' Fees and Costs, and Class Representatives' Service Payments.  ECF Nos. 61, 66.  No class members have objected to the settlement, and ten class members have opted out.  ECF No. 76, Supplemental Decl. of Stephen Gomez (Gomez Supp. Decl.) ¶ 3.  The Court held a fairness hearing on December 17, 2015.  ECF No. 75.  The Court will grant the motion for final approval and grants in part the motion for attorneys' fees, litigation costs, and service enhancement awards.

## I.  BACKGROUND

Plaintiffs Al Smith and Jeffrey Hourcade bring this putative wage and hour class action against American Greetings Corporation on behalf of its current and former non-exempt California employees.  ECF No. 51, Third Amended Complaint ¶ 1.  In the present settlement, Plaintiffs seek penalties for violations of the Fair Labor Standards Act, California's Private Attorney General Act ("PAGA"), California's Unfair Competition Law, and various California employment statutes.  Id. ¶¶ 10–88.  Plaintiffs allege Defendant failed to compensate its employees for travel time spent on behalf of the company, time spent waiting for company vans, and time spent entering hours

worked.  Id. ¶¶ 19–56.  Plaintiffs also allege Defendant prevented employees from entering accurate hours in Defendant's time system, and from taking mandatory meal and rest breaks.  Id. ¶¶ 19–56.  Thus, Plaintiffs claim their wage statements inaccurately reflected their actual time worked.  Id. ¶¶ 40–41, 61–62.  Finally, Plaintiffs allege Defendant failed to reimburse Plaintiffs for various expenses, including purchasing cell phones and computers that were "necessary to perform [Plaintiffs'] expected work duties."  Id. ¶¶ 46–47.  A more detailed description of the facts and claims at issue in this action can be found in the Court's July 23, 2015 Order.[1]  See ECF No. 56.

In its July 23, 2015 Order, the Court: (1) granted preliminary approval of the parties' proposed settlement agreement and conditionally certified the putative class for settlement purposes; (2) appointed Plaintiffs Smith and Hourcade as class representatives; (3) appointed Kevin Woodall ("Woodall") as class counsel; (4) approved the parties' proposed notice program as well as the content of the notices; and (5) approved and ordered that they follow certain opt-out and objection procedures.  ECF No. 56 at 18.[2]  On October 14, 2015, Plaintiffs moved for final approval of the settlement, attorneys' fees and costs, and incentive payments of $7,500 for class representatives Smith and Hourcade.  ECF Nos. 61, 66.

On January 29, 2016, the Court granted final approval of the settlement and granted in part and denied in part the motion for attorneys' fees, costs, and class representative service payments. ECF No. 77.  On February 9, 2016, the Court granted the parties' stipulation to vacate the January 29, 2016 Order in order to permit the parties to comply with the notice requirements of 28 U.S.C. § 1715.  ECF No. 79.  The parties have complied with the notice requirements of 28 U.S.C. §1715, and no federal or state officials filed objections or posed questions about the settlement.  ECF No. 82 at 3.  The Court, accordingly, reissues this Order granting final approval of the settlement and granting in part the motion for attorneys' fees, costs, and class representatives' service payments.

---

[1] On July 27, 2015, the Court issued an amended Order that was substantively identical to the Order issued on July 23, 2015.  See ECF No. 57.

[2] The pages refer to the pagination in the Court's Electronic Case Filing system.

United States District Court
Northern District of California

## A.   Settlement Agreement

The proposed settlement agreement defines the class as:

> [A]ll persons who worked in California at least one day during the Class Period in any hourly nonexempt position for American Greetings Corporation, Papyrus-Recycled Greetings, Inc., AGCM Inc. and/or Cloudco, Inc.

ECF No. 54, Ex. A at 4.  The "Class Period" is June 4, 2010 through "the date the Court files its Preliminary Approval Order," which the Court entered on July 23, 2015.  Id. at 5.  There are 3,743 class members.  ECF No. 76, Gomez Supp. Decl. ¶ 2.

Pursuant to the agreement, Defendant will create a settlement fund.  ECF No. 54, Ex. A at 8–9.  The total settlement fund is $4,000,000, and from this the settlement agreement provides that the following amounts will be subtracted: $1,120,000 in attorneys' fees; a maximum of $10,000 in attorneys' costs, $35,000 in administrative costs; $7,500 as individual incentive awards for both named plaintiffs; $37,500 in penalties paid to the California Labor & Workforce Development Agency ("LWDA"); and any applicable payroll taxes.  Id. at 16–18.  The remaining amount will be paid on a "pro rata" basis to "participating Class Members . . . based on the number of Days Worked, as a fraction of the total days Worked of all Participating Class Members."  Id, at 18.  The data indicate that 44.10% of the class members have submitted claim forms, representing 71.06% of the Net Settlement Fund.  ECF No. 76, Gomez Supp. Decl. ¶ 2.  The average class participant is currently slated to receive $1,615.01, while the highest amount that will be paid to a class member is $6,322.72.  Id.

Class members who have not opted out of the settlement agree to release Defendant from:

> Any and all Claims, for any relief whatsoever . . . which the Named Plaintiffs or any Plaintiff Class Member has had, now has, or may have in the future against the Released Parties or any of them for any acts occurring on or before the date on which the Court enters an order of final approval regarding this Settlement that were or could have been asserted in the Action, or that are based upon, arise out of, or relate to any of the facts alleged or litigated in the Action, including any that are based upon or arise out of the California Labor Code or any similar provision of federal, state or local law.
>
> [This includes] any and all Claims arising on or before the date on which the Court enters an order of final approval regarding this Settlement that relate to, are based on, or arise out of the facts and Claims alleged or litigated in the Action concerning the Named

United States District Court
Northern District of California

1

Plaintiffs' or Plaintiff Class Members' compensation and/or other payments, including reimbursement for work related expenses, received while employed by any Released Party including, but not limited to, Claims arising under or relating to (i) the wage-and-hour provisions of the California Labor Code and the Wage Orders adopted by the California IWC, specifically including but not limited to Claims under Labor Code sections 201, 202, 203, 204, 204b, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 550–552, 558, 1194, 1194.2, 1197, 1197.1, 1198, 2802; (ii) the federal Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, and its regulations; (iii) conversion; and (v) [*sic*] Claims under Business and Professions Code sections 17200, *et seq.* and Labor Code sections 2698, *et seq.* which are based on the Claims that were or could have been alleged in the Action or which are additionally sought to be asserted as part of this Agreement in the Action, or that arise out of or relate to the facts alleged in the Action.

2

3

4

5

6

7

8

9    ECF No. 54, Ex. A at 8–9.

10          As part of the settlement arrangement, Defendant also agree not to oppose Plaintiffs'

11   application for attorneys' fees and class representative payments.  Id. at 15–16.

12          **B.      Jurisdiction**

13          The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331

14   and 29 U.S.C. § 216(b).  The Court has supplemental jurisdiction over Plaintiffs' state-law claims

15   under 28 U.S.C § 1367.

16   **II.     FINAL APPROVAL OF THE SETTLEMENT**

17          **A.      Legal Standard**

18          "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

19   approval." FED. R. CIV. P. 23(e).  "Adequate notice is critical to court approval of a class

20   settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998).  In

21   addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is

22   fundamentally fair, adequate, and reasonable." Id. at 1026.  In order to assess a settlement

23   proposal, the district court must balance a number of factors:

24          (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

25

26

27

28

United States District Court
Northern District of California

4

1   <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004).[3]

2        Settlements that occur before formal class certification also require a higher standard of

3   fairness.  <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such

4   settlements, in addition to considering the above factors, the court also must ensure that "the

5   settlement is not the product of collusion among the negotiating parties."  <u>In re Bluetooth Headset</u>

6   <u>Prods. Liab. Litig.</u>, 654 F.3d 935, 946–47 (9th Cir. 2011).

7        **B.  Analysis**

8        The Court finds that the proposed settlement is fair, adequate, and reasonable.

9             **1.      Adequacy of Notice**

10       "The class must be notified of a proposed settlement in a manner that does not

11  systematically leave any group without notice."  <u>Officers for Justice v. Civil Serv. Comm'n of</u>

12  <u>City & Cnty. of San Francisco</u>, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

13       Here, the court previously approved the parties' proposed plan for providing notice to the

14  class.  ECF No. 57.[4]  The parties have shown that the class administrator, Simpluris, has carried

15  out the notice plan approved by the court by preparing the class list, mailing notice to the class

16  members via first class mail, and performing address traces to re-mail the notice to class members

17  whose mail was returned undeliverable.  ECF No. 63, Declaration of Stephen Gomez (Gomez

18  Decl.) ¶¶ 2–5; <u>see also</u> ECF No. 62 at 13–14.  As of October 13, 2015, only 23 of the 3,743

19  notices (representing 0.6% of the class) remain undeliverable due to the inability to identify a

20  current address.  ECF No. 63, Gomez Decl. ¶ 5.  The class administrator also "mailed postcard

21  reminders to those Class members who had not yet filed a Claim Form, opted out of the settlement

22  or objected to the settlement."  <u>Id.</u>  ¶ 4.

23       In light of the foregoing, the Court finds that the parties have sufficiently provided the best

24

---

25  [3] There is no governmental participant in this case, so the Court need not consider this factor.

26  [4] On September 15, 2015, the parties submitted a Case Management Statement informing the
    Court of errors in identifying class members and administering class notices and claim forms.  <u>See</u>

27  ECF No. 58.  Seventeen class members were not originally identified as such and so did not
    receive class notice or a claim form.  Thirty class members received claim forms that listed an

28  incorrect number of days worked.  These errors were fixed by providing supplemental notice.  <u>Id.</u>;
    ECF No. 60.

United States District Court
Northern District of California

practicable notice to the settlement class members.  See Lundell v. Dell, Inc., Case No. 05–3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements); see also Boring v. Bed Bath & Beyond, No. 12-CX-05259-JST, 2014 WL 2967474, at *1 (N.D. Cal. June 30, 2014) (finding adequate notice where parties implemented approved notice plan and only "twenty-seven of the 1,374 class notices [representing 1.97% of the notices initially sent] were returned undeliverable after a second attempt and a skip trace").

### 2.   Fairness, Adequacy, and Reasonableness

#### a.   Strength of Plaintiffs' Case

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case."  Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Plaintiffs acknowledge that if the settlement is not approved, they will encounter significant obstacles in establishing their claims in light of uncertainties surrounding class certification, ascertainability, and proof of damages for various issues.  See ECF No. 62 at 16. Plaintiffs, for example, acknowledge it would be difficult to prove damages for their inaccurate wage statement claims because a jury might find that the class members, rather than Defendant, were at fault for inaccurately recording time.  Id.  These acknowledged weaknesses weigh in favor of approving the settlement.  See Moore v. Verizon Communications Inc., C 09–1823 SBA, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored settlement because plaintiff admitted that it would face hurdles in establishing class certification, liability, and damages).

#### b.   Risk of Continued Litigation

Difficulties and risks in litigating weigh in favor of approving a class settlement.  See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

This factor supports granting final approval of the settlement because if the parties did not settle, Plaintiffs would have to proceed through class certification, summary judgment and trial. ECF No. 62 at 16–17. This case has already lasted sixteen months, and no alternative resolution is

United States District Court
Northern District of California

6

1  imminent.  Plaintiffs have asserted ten separate causes of action and they seek class certification

2  for all ten claims.  See ECF No. 56 at 12.  Thus, further litigation of this case would necessarily be

3  extensive and complex.  Id.

4              **c.      Risk of Maintaining Class Action Status**

5         It seems likely that if the Court did not approve this settlement, Defendant would challenge

6  certification for some or all of the subclasses.  Defendant maintains, for example, that "it would be

7  difficult to ascertain who was denied meal and rest periods."  ECF No. 36 at 15.  Plaintiffs

8  concede that, if "Defendant prevailed regarding the ascertainability issue, there would be no class

9  related to the meal and rest period issues and no damages would be awarded."  Id.  The potential

10 difficulties associated with maintaining class certification in this case weigh in favor of approving

11 the settlement.  See McKee Foods, 716 F. Supp. 2d at 851 (holding that this factor supports

12 approving a settlement when both parties acknowledge the possibility of decertification).

13             **d.      Settlement Amount**

14        The Court previously concluded that the amount of the settlement was within the range of

15 possible approval.  ECF No. 57 at 13.  $4 million represents approximately 20% of the total

16 maximum potential recovery to which Plaintiffs would be entitled if they prevailed on all claims.

17 Id.  Excluding PAGA penalties—which Defendant may be able to significantly reduce if this case

18 proceeds to trial—the settlement represents approximately 42% of the maximum potential

19 damages.  ECF No. 64, Declaration of Kevin Woodall (Woodall Decl.) ¶ 55; see also ECF No. 62

20 at 15.

21        Plaintiffs here can obtain the maximum amount of potential penalties only by meeting

22 heightened standards of proof—e.g., that Defendant willfully violated the Labor Code.  Defendant

23 has indicated it will challenge Plaintiffs' request for PAGA penalties on several grounds,

24 including lack of intent.  ECF No. 64 at 9–10 (noting Defendant's assertions that class members

25 are not entitled to reimbursement or PAGA penalties for many claimed expenses).  Further,

26 Plaintiffs will recover as a class only if they obtain certification for any of their ten claims, which

27 may be difficult given Plaintiffs' concerns about ascertainability.  ECF No. 62, MPA at 12.

28 Moreover, as the Court noted in its Order preliminarily approving the settlement, Defendant has

United States District Court
Northern District of California

1    changed many of the practices Plaintiffs challenged as illegal in this litigation, ECF No. 64 at 12,

2    making the total "recovery" to Plaintiffs include additional benefits beyond monetary damages.

3        Because of the risk, expense, complexity, and likely duration attached to the litigation of

4    these claims, the Court finds that a settlement based on this fraction of potential recovery is fair

5    and reasonable.

6                    **e.        Extent of Discovery**

7        "In the context of class action settlements, 'formal discovery is not a necessary ticket to the

8    bargaining table' where the parties have sufficient information to make an informed decision

9    about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation

10   omitted).

11       Here, Plaintiffs assert "there has been a significant amount of informal written discovery,

12   three depositions and interviews of many witnesses." ECF No. 62 at 20.  Through this discovery,

13   Plaintiffs "obtained an extensive data sample of wage statements and time entries equivalent to

14   roughly 10 percent of the Class, all applicable policies and procedures, and detailed information

15   relating to the applicable employment practices." Id.  According to the attorneys' time sheets,

16   they cumulatively spent hundreds of hours analyzing and collecting this data over the course of the

17   litigation.  ECF No. 68, Woodall Decl. at 9; ECF No. 71, Makarin Decl. at 3.  Class counsel also

18   conducted numerous interviews of class members, as well as attended a mediation session.  Id.

19       The Court finds that the parties conducted sufficient discovery to make an informed

20   decision regarding the settlement's adequacy.  See In re Omnivision, 559 F. Supp. 2d at 1042

21   (finding the parties were sufficiently informed about the case prior to settling because they

22   engaged in discovery, took depositions, briefed motions, and participated in mediation).

23                    **f.        Counsel's Experience**

24       The sixth factor looks at the experience and views of counsel.[5]  See Churchill Village, 361

25

26   ──────────────
     [5] The Court considers this factor, as it must, but gives it little weight. "Although a court might give
27   weight to the fact that counsel for the class or the defendant favors the settlement, the court should
     keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a
28   strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a
     (2010).

                                                    8

F.3d at 575.

Here, class counsel have demonstrated that they are sufficiently informed about the current dispute and that Mr. Woodall has more than 20 years of experience defending and prosecuting class actions. See ECF No. 62 at 21. No party has provided the court with any evidence contradicting the notion that class counsel's recommendations are reasonable. In light of the foregoing, class counsel's support for the settlement weighs in favor of approving the settlement. See, e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement presumptively reasonable because they demonstrated knowledge about the case and securities litigation in general).

### g. Reaction of the Class

Class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Id. (citation omitted).

In this case, of 3,743 class members, only 10 (0.27%) have opted out of the settlement and none have objected. ECF No. 76, Gomez Supp. Decl. ¶ 2. Currently, 44.10% of class members have submitted claim forms. Id. Given the class members' positive reaction, the Court finds that the settlement is favorable to the class members. See e.g., McKee Foods Corp., 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

Balancing these factors, the Court finds the settlement fair and reasonable.

### 3. Absence of Collusion

Because this settlement was reached prior to class certification, the Court must examine the settlement for evidence of collusion with a higher level of scrutiny. In re Bluetooth, 654 F.3d at 946. In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiation." Id. Signs of collusion

1    include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a

2    "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant

3    rather than to be added to the settlement fund.  Id. at 947.  If "multiple indicia of possible implicit

4    collusion" are present, a district court has a special "obligat[ion] to assure itself that the fees

5    awarded in the agreement were not unreasonably high."  Id.[6] (citing Staton v. Boeing Co., 327

6    F.3d 938, 965 (9th Cir. 2003).

7            As to the first factor, in common fund settlements, the Ninth Circuit sets a "benchmark"

8    fee award at 25% of the recovery obtained.  See In re Online DVD-Rental Antitrust Litig., 779

9    F.3d 934, 949 (9th Cir. 2015); In re Bluetooth Headset Prods. Liab. Litig., 645 F.3d 935 (9th

10   Cir.2011).  As discussed in further detail in Section III.B of this Order, several factors support an

11   upward departure from the benchmark.  The Court finds that 28% is not a "disproportionate

12   amount."

13           As to the second factor, the settlement agreement contains a clear sailing provision.  The

14   agreement states Defendant will not "oppose [Plaintiffs'] application" for attorneys' fees and class

15   representative payments.  ECF No. 54, Ex. A at 15–16.  "Although clear sailing provisions are not

16   prohibited, they 'by [their] nature deprive . . . the court of the advantages of the adversary process'

17   in resolving fee determinations and are therefore disfavored."  In re Bluetooth, 654 F.2d at 949

18   (quoting Weinberger v. Great Northern Nekoosa Corp., 925 F.3d 518, 525 (1st Cir. 1991)).  When

19   "confronted with a clear sailing provision, the district court has a heightened duty to peer into the

20   provision and scrutinize closely the relationship between attorneys' fees and benefits to the class,

21   being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."

22   Id. at 948 (citing Staton, 327 F.3d at 954).

23

24   ───────────────

25   [6] In In re Bluetooth, 654 F.3d at 947–49, class counsel to a products liability class action requested
     $800,000 in attorneys' fees as compared to $100,000 in cy pres relief and no direct monetary
     compensation to the class.  The settlement included a "'clear sailing agreement,' by which
26   defendants agreed not to object to an award of attorneys' fees up to eight times the monetary cy
     pres relief afforded the class."  Id. at 947.  The "settlement also contained a 'kicker,'" which
27   provided that "all fees not awarded would revert to defendants rather than be added to the cy pres
     fund or otherwise benefit the class."  Id.  The Ninth Circuit overturned the district court's approval
     of the settlement, and remanded the case for the district court to scrutinize the settlement using
28   these three factors.  Id. at 949.

However, a "clear sailing provision does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class." In re High-Tech Employee Antitrust Litigation, 11-cv-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sep. 2, 2015) (internal quotations omitted) (citing Rodriguez v. West Publ'g Corp., 563 F.3d 948, 961 n.5 (9th Cir. 2009)); see also Bayat v. Bank of the West, No. C-13-2376 EMC, 2015 WL 1744342, at *7 (N.D. Cal. Apr. 15, 2015) ("because any attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval"). This factor therefore does not weigh against settlement approval. See ECF No. 54, Ex. A at 16 ("These fees and costs are included in, and shall come from, the Settlement Fund").

As to the third factor, there is no kicker arrangement whereby "unpaid attorneys' fees" would revert back "to the defendant rather than to the class." In re Bluetooth, 654 F.3d at 949. Instead any remaining funds will be distributed among the claimants on a pro rata basis. See ECF No. 54, Ex. A at 16 ("To the extent attorneys' fees are not approved in the full amount set forth above, then the amount not approved shall remain in the Net Settlement Fund for distribution to Participating Class Members").

As none of the three signs of collusion weigh against approving the settlement, the Court finds the settlement fair and reasonable.

## III.    ATTORNEYS' FEES

### A.    Legal Standard

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942; see Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 27 (2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund cases."). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth, 654 F.3d at 941. "Because the benefit to the class is easily quantified in common-fund settlements,"

11

1    courts can "award attorneys a percentage of the common fund in lieu of the often more time-

2    consuming task of calculating the lodestar."  Id. at 942.

3        "[E]ven though a district court has discretion to choose how it calculates fees . . . it abuses

4    that discretion when it uses a mechanical or formulaic approach that results in an unreasonable

5    reward."  In re Bluetooth, 654 F.3d at 944 (internal quotation marks omitted).  Thus, the Ninth

6    Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their

7    calculations against a second method."  Id.; see also In re Sutter Health Uninsured Pricing Cases,

8    171 Cal. App. 4th 495, 512 (2009) (affirming attorneys' fee award calculated as a percentage-of-

9    recovery with a lodestar cross-check).

10       **B.     Analysis**

11       The settlement fund totals $4,000,000.  Class counsel seeks 28% in attorneys' fees, totaling

12   $1,120,000.

13       When using a percentage-of-recovery method, "courts typically calculate 25% of the fund

14   as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of

15   any 'special circumstances' justifying a departure."  In re Bluetooth, 654 F.3d at 942 (citations

16   omitted).  Plaintiffs here contend that, despite the fact that their requested amount exceeds the

17   25% benchmark, the significant benefit obtained on behalf of the class, the complexity of the

18   litigation, and counsel's assumed risk (taking the case on contingency) support a departure from

19   25%.  ECF No. 67 at 13–20.

20       Courts typically consider five factors when determining whether to depart from the 25%

21   benchmark.  In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954–55 (9th Cir. 2015)

22   (stating that courts can consider whether class counsel "'achieved exceptional results for the

23   class,' whether the case was risky for class counsel, whether counsel's performance 'generated

24   benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some

25   circumstances), the burdens class counsel experienced while litigating the case (e.g., cost,

26   duration, foregoing other work), and whether the case was handled on a contingency basis")

27   (quoting Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047–50 (9th Cir. 2002)).

28       "[T]he most critical factor [in determining appropriate attorneys' fee awards] is the degree

United States District Court
Northern District of California

12

of success obtained." Hensley, 461 U.S. at 436; see Bayat, 2015 WL 1744342, at *8 (refusing to award 25% of the settlement fund in attorneys' fees because the "monetary relief [was] less than 1% of the full potential verdict value, and less than 2% of the class [would] receive any monetary benefit"). Here, Plaintiffs' counsel contends that, in response to the suit, Defendant (1) "corrected its wage statements by listing the accurate number of overtime and double time hours worked," (2) "set a firm deadline for [employee time entry] and will enforce it," (3) "changed its practice for reimbursements such that Class Members will have an opportunity to input the actual mileage to be reimbursed instead of relying upon estimates linked to the travel time," (4) "agreed to revise its business reimbursement policy with respect to internet access," and (5) will remind and "encourage employees to take meal/rest periods." ECF No. 67 at 14–15. Plaintiffs claim the "changed reimbursement policies will save Class Members and future employees an estimated $3.25 million over the next four years" alone. Id. at 15.

The Court agrees that these case-specific benefits are substantial. As the Court noted in its Order granting preliminary approval of the settlement, some of Plaintiffs' primary allegations were that Defendant failed to pay "overtime and minimum wages for travel time, time spent waiting for company vans, and time spent on administrative tasks," and that Defendant also failed to accurately maintain employee paystubs and prevented employees from being able to accurately record their time. ECF No. 56 at 2. In addition to compensating Plaintiffs for lost wages, class counsel's efforts have remedied many of the corporate policies that led to this lawsuit.

These benefits support an upward departure from the Ninth Circuit's 25% standard. Compare Larsen v. Trader Joe's Company, No. 11-cv-05188-WHO, 2014 WL 3404531, at *9 *N.D. Cal. July 11, 2014) (granting request for 28% in attorneys' fees when the litigation convinced Defendant to stop the offending practice that led to the suit), with Moore v. PetSmart, Inc., No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *11 (N.D. Cal. Aug. 4, 2015) (refusing to award the requested 33% of the settlement funds for attorneys' fees—and instead awarding 27%— because while counsel obtained a high benefit for the class, "the injunctive relief obtained is not of the type that would incur a significant change in policy or practice on behalf of PetSmart"). It is also notable that the settlement represents 20% of the class's maximum possible recovery for all

ten claims, including all possible PAGA penalties.  See In re Omnivision, 559 F. Supp. 2d at 1046

(concluding that a settlement representing 9% of all possible damages in a securities class action

weighed in favor of granting 28% in attorneys' fees).

Finally, "the lack of objection from any Class Member supports the attorneys' fee award."

In re Immune Response, 497 F.Supp. 2d 1166, 1177 (S.D. Cal. May 31, 2007).

Balancing the relevant factors, the Court finds that Plaintiffs' requested attorneys' fees are

reasonable under the percentage-of-recovery method.

The Court now cross-checks the percentage award against the lodestar.  Plaintiffs' counsel

claim their total lodestar is $622,705.  ECF No. 67 at 24.  Woodall and Makarin's affidavits

discuss the hours spent on the case, with descriptions for each sub-task.  ECF Nos. 68, 71.

Plaintiffs' attorneys use a Laffey matrix to support counsel's hourly billing rates.[7]  ECF No. 68,

Ex. A.

| Attorney | Billing Rate | Number of Hours | Amount |
|---|---|---|---|
| Kevin Woodall | $725 | 627.1 | $454,647.50 |
| Sean Makarin | $325 | 517.1 | $168,057.50 |
| | | 1,125.2 | $622,705.00 |

Based on Plaintiffs' requested $1,120,000 figure, the lodestar multiplier in this case is

approximately 1.8, which is within the range of awards in similar cases.  See Vizcaino, 290 F.3d at

1051 n.6 (noting that the majority of class action settlements approved had fees multipliers that

ranged between 1.5 and 3); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334 (N.D. Cal.

2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83); In re Google Referrer

Header Privacy Litig., No. 5:10–CV–04809–EJD, 2015 WL 1520475, at *10 (N.D. Cal. Mar. 31,

2015) (lodestar multiplier of 2.2).  Additionally, the requested award would not "yield windfall

profits for class counsel in light of the hours spent on the case."  In re Bluetooth, 654 F.3d at 942;

United States District Court
Northern District of California

---

[7] The reasonable hourly rate for computing the lodestar amount is based on the "prevailing market rates in the relevant community."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013).  In the present case, "the relevant community is the Northern District of California where reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and paralegals and litigation support staff range from $150 to $240."  PetSmart, 2015 WL 5439000, at *12.  The billing rates are within the range approved in this district.

1    see also Custom LED, LLC v. eBay, Inc, No. 12-CV-00350-JST, 2014 WL 2916871, at *9 (N.D.

2    Cal. June 24, 2014) (approving a 1.94 multiplier of the lodestar for a $4,750,000 settlement fund).

3           The Court concludes that an attorneys' fee award of $1,120,000, or 28% of the settlement

4    fund, is reasonable.

5    **IV.**     **COSTS**

6        **A.**     **Legal Standard**

7           An attorney is entitled to "recover as part of the award of attorney's fees those out-of-

8    pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24

9    F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, Plaintiffs should file

10    an itemized list of their expenses by category and the total amount advanced for each category,

11    allowing the Court to assess whether the expenses are reasonable. Wren v. RGIS Inventory

12    Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011),

13    supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

14        **B.**     **Analysis**

15           Here, Plaintiffs provided a list of costs incurred during this litigation, separated by

16    category. ECF No. 68 at 13; ECF No. 66, Ex. E. The expenses consist of fees for deposition

17    transcripts, hiring a mediator, filing court documents, and miscellaneous mail and copying costs.

18    Id. Overall, the Court finds the charged costs reasonable. The Court therefore holds that Woodall

19    is entitled to reimbursement of $8,047.25. As the settlement agreement provided for a maximum

20    recovery of $10,000 in attorneys' costs, ECF No. 54, Ex. A at 15, the remaining $1,952.75 will be

21    added to the Net Settlement Fund.

22    **V.**     **SERVICE AWARDS**

23        **A.**     **Legal Standard**

24           "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

25    are eligible for reasonable incentive payments." Staton, 327 F.3d at 977. "Incentive awards are

26    discretionary . . . and are intended to compensate class representatives for work done on behalf of

27    the class, to make up for financial or reputational risk undertaken in bringing the action, and,

28    sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563

United States District Court
Northern District of California

F.3d at 958–59 (internal citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).

**B. Analysis**

Plaintiffs request awards of $7,500 each for Smith and Hourcade. ECF No. 67 at 25–26. These amounts exceed typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable. See Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and /or that, as a general matter, $5,000 is a reasonable amount") (citations omitted).

Plaintiffs assert that $7,500 is appropriate for several reasons:

> Smith and Hourcade spent many hours providing much needed facts and information, preparing for and having their depositions taken, and reviewing and signing multiple versions of the settlement agreement . . . each of them spent approximately 20-25 hours on this case. Equally important, they acted as private attorneys general in prosecuting the PAGA claims, took off from work to attend their depositions, and have remained involved in the case for over 16 months. [They] also subjected themselves to a negative reputation with their employers and prospective employers by bringing this lawsuit. Unlike the other Class members, [] Smith and Hourcade released all known and unknown claims that could be brought against Defendant, not just the claims in this litigation, and gave up their right to seek future employment with Defendant []. Finally, the amounts sought are a tiny fraction of the $4,000,000 Settlement Fund, and are not significantly more than the average class member will obtain.

ECF No. 67 at 26–27 (internal citations omitted).

While the Court acknowledges these points, it will not award Smith and Hourcade $7,500 for several reasons. First, to determine the reasonableness of a requested incentive payment,

courts consider the proportionality between the incentive payment and the range of class members' settlement awards. <u>Burden v. SelectQuote Insurance Services</u>, No. 10-cv-5966-LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013). The Settlement Administrator projected that the average class participant currently is slated to receive $1,608.16. ECF No. 76, Gomez Supp. Decl. ¶ 2. The proposed $7,500 amounts to roughly 4.7 times this amount.

While 4.7 times the average class member is not an extraordinary ratio, the modest amount of time Smith and Hourcade expended on the litigation weighs in favor of a $5,000 award. Hourcade estimates he spent 20 hours on the case and Smith estimates he spent 20-25 hours on the case. ECF No. 69, Hourcade Decl. ¶ 4; ECF No. 70, Smith Decl. at ¶ 4; <u>see</u> <u>Willner v. Manpower Inc.</u>, No. 11-cv-02846-JST, 2015 WL 3863625, at *8 (N.D. Cal. June 20, 2015) (awarding $7,500 to a class representative who contributed 54 hours to the litigation over four years, sat for a day-long deposition, and responded to written discovery requests, among other tasks); <u>Fleury v. Richemont N. Am., Inc.</u>, No. C-05-4325 EMC, 2008 WL 3287154, at *6 (N.D. Cal. Aug 6, 2008) (awarding $5,000 where class representative was involved in litigation for three years, sat for a deposition, responded to written discovery, and attended a mediation session); <u>Burden</u>, 2013 WL 3988771, at *6 (awarding class representative $5,000, even though they had sat for two depositions and spent a total of 80 hours on the case).

The Court finds that the enhancement award of $5,000 each is appropriate to compensate Smith and Hourcade for the time and effort they spent in connection with this litigation and the risks they took on behalf of their fellow class members. The residual $5,000 will be added to the Net Settlement Fund.

## VI.   SETTLEMENT ADMINISTRATION COST/CY PRES

Pursuant to the settlement terms:

> Subject to Court approval, an amount of Thirty-Five Thousand Dollars and No Cents ($35,000.00) will be set aside from the Settlement Fund to cover any of the Settlement Administrator's costs of administering the Settlement. If any portion of this amount remains after 60 days following the Effective Date, such remaining amount shall be donated to Jewish Vocational Services.

ECF No. 54, Ex. A at 17. Spread out among the identified 3,743 class members, this amounts to

1  |  $9.35 per class member.

2  |  Courts regularly award administrative costs associated with providing notice to the class.

3  |  See, e.g., Odrick v. Union Bancal Corp., No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal.

4  |  Dec. 3, 2012).  Given that the average class participant will recover approximately $1,608.16, the

5  |  Court concludes that these costs are reasonable and incurred for the benefit of the class.  The Court

6  |  approves these costs.

7  |  The modest cy pres award is also appropriate.  "Given the wage-and-hour nature of this

8  |  action, the work performed by [Jewish Vocational Services] bears a substantial nexus to the

9  |  interests of the class members and is sufficiently related to the nature of Plaintiffs' lawsuit."

10 |  PetSmart, 2015 WL 5439000, at *8.[8]  The Court approves a cy pres award to Jewish Vocational

11 |  Services as set forth above.

12 |  **VII.    PAYMENT TO THE LABOR WORKFORCE DEVELOPMENT AGENCY**

13 |  The parties have agreed that $37,500 from the settlement fund will be paid to the

14 |  California LWDA, as "civil penalties under the Labor Code Private Attorneys General Act of

15 |  2004."  ECF No. 54, Ex. A at 17.  The Court approves the payment.

16 |  **CONCLUSION**

17 |  The Court orders as follows:

18 |  1.    For the reasons set forth in its July 27, 2015 order, the Court confirms its
       certification of the class for settlement purposes only.

19 |

20 |  2.    The Court grants final approval of the proposed settlement.

21 |  3.    The Court grants incentive awards of $5,000 each to Plaintiffs Al Smith and Jeffrey
       Hourcade.

22 |

23 |  4.    The Court grants Plaintiffs' counsel $1,120,000 in attorneys' fees.

24 |  5.    The Court grants Plaintiffs' counsel $8,047.25 in litigation costs.

25 |  6.    The Court grants $35,000 in settlement administration costs to be paid from the
       settlement fund.

26 |

27 |  ---

28 |  [8] As the Court noted in its order preliminarily approving this settlement, the parties initially proposed a much larger cy pres award.  ECF No. 56.  Now only the unspent remainder of the settlement administration fund, if any, will be devoted to this purpose.

7.    The Court grants $37,500 to be paid to the California LWDA from the settlement fund as PAGA penalties.

8.    Class members who asked to opt out of the settlement are excluded from the class.

9.    The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

10.   Judgment is hereby entered on the terms set forth above. The clerk shall close the file.

IT IS SO ORDERED.

Dated:  May 19, 2016

_____
JON S. TIGAR
United States District Judge